UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>**Nar Timsina**</u>

    v.                                          Case No. 19-cv-1262-LM

<u>**Andrew Saul, Commissioner**</u>
<u>**Social Security Administration**</u>

<u>**REPORT AND RECOMMENDATION**</u>

Nar Timsina challenges the denial of her application for supplemental security income under 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") erred in relying upon alternate step five jobs that can only be performed with a workplace accommodation and improperly weighed medical opinions in her record. The Commissioner, in turn, moves for an order affirming the ALJ's decision. Finding no reversible error, the court recommends that the district judge deny Timsina's motion and grant the Commissioner's motion.

**I.**    <u>**STANDARD OF REVIEW**</u>

The court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. <u>See</u> 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the

proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The court defers to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

## II.   BACKGROUND[1]

### A.   Procedural Facts

Timsina filed her original claim for supplemental security income on December 31, 2014, when she was 44 years old.[2] Timsina is illiterate. She is unable to speak, read or write English and cannot read or write in her native language, Bhutanese. On July 22, 2015, Timsina's application was denied at the initial level, so she requested a hearing. The hearing took place on May 12, 2017, before ALJ Dory Sutker. The ALJ denied her claim on June 30, 2017. Timsina, then, requested a review by the Appeals Council, which was denied on May 8, 2018.

Next, Timsina sought review in this district court. After the parties agreed to a remand, the case was remanded for further proceedings on November 26, 2018. The Appeals Council, in turn, remanded the case on December 10, 2018, and directed the ALJ to (1) re-evaluate the opinions of Timsina's treating physicians and non-examining sources; (2) give further consideration to her residual functional capacity and provide rationale for its limitations; and (3) obtain supplemental

---

[1] The court provides a summary of the relevant facts. A more detailed recitation appears in the parties' statements of material facts (Doc. Nos. 13 & 15), which the court incorporates by reference. See L.R. 9.1(b)-(c).

[2] After the filing but before the ALJ's decision, Timsina changed age categories from age 18-44 to 45-49.

evidence from a vocation expert to clarify the effect of the assessed limitations on Timsina's occupational base.

The remand hearing was held on August 28, 2019, and the ALJ denied benefits on September 24, 2019. On appeal, Timsina challenges the alternate step five jobs identified by the vocational expert and argues that the ALJ improperly weighed two medical opinions in the record.[3]

B.    **Relevant Medical Opinions**[4]

William Dinan, Ph.D., a licensed psychologist, conducted a comprehensive psychological profile of Timsina in 2015, based on a referral from the State of New Hampshire to assess her functional loss due to migraine headaches, vomiting blood, and feelings of stress and weakness. See Tr. 399-403. Timsina was

---

[3] Timsina presented a third argument, that the ALJ's step four determination is contrary to law because she does not have past relevant work. The Commissioner has conceded the error and correctly states that the ALJ's error is harmless if the step five determination - that Timsina could perform other jobs that exist in significant numbers in the national economy - is supported by substantial evidence. See Otero v. Colvin, No. 14-CV-206-PB, 2015 WL 5089810, at *7 & n.4 (D.N.H. Aug. 27, 2015) (concluding that any error in making alternate step four and step five findings is harmless where step five finding is supported by substantial evidence); Mason v. Astrue, No. 12-CV-017-SM, 2013 WL 391173, at *6 (D.N.H. Jan. 30, 2013) (finding step four error harmless where substantial evidence supported step five finding). Accordingly, the court does not address the step four argument in this Report and Recommendation.

[4] The ALJ evaluated additional medical opinions in the record. As Timsina does not challenge the ALJ's weighing of those opinions, the court does not address them.

cooperative, alert, and well-oriented during the assessment. See Tr. 400-401. Her speech was clear, her memory function was adequate, and her attention to visual detail was inconsistent. See Tr. 400-401. Timsina reported migraine headaches that occurred three to four times a week for three years. See Tr. 400. She also stated that she suffered from diabetes, significant stomach pain, blood in her mouth, tiredness, forgetfulness, and daily sadness. See Tr. 400. Dr. Dinan observed mild clinical signs of depression and anxiety, a narrow range of emotional expression, and a depressive tone. See Tr. 400. Dr. Dinan opined that Timsina could complete basic, routine tasks, tolerate stressors common to a work environment, and did not have "any emotional barriers maintaining attendance and a schedule." Tr. 402-403.

Dr. Dinan conducted a second psychological profile of Timsina in December 2018, based on a referral from the State to assess her functional loss due to illiteracy. See Tr. 2197-2201. Dr. Dinan noted that Timsina was cooperative, alert, well-oriented, and she provided detailed responses to the questions being asked. See Tr. 2198-2199. Her speech was clear, her range of emotional expression was within normal limits, her memory function was adequate, her concentration was adequate, and her attention to visual detail was inconsistent. See Tr. 2198-2199. Dr. Dinan did not observe clinical signs of depression or

5

anxiety, and Timsina reported a lower rate of feelings of sadness as compared to her 2015 evaluation. Compare Tr. 2198, with Tr. 400. Timsina again reported migraine headaches, diabetes, and signs of depression, as well as several new medical conditions, including low hemoglobin, hypothyroidism, high blood pressure, and increased forgetfulness. See Tr. 2198. Dr. Dinan opined that Timsina was "not able to focus attention on work activities and stay on-task at a sustained rate," and that she was "not able to regulate emotions, control behavior, or to maintain well-being in a work setting." Tr. 2200.

Beth Koester, M.D., became Timsina's primary care physician in August 2018. See Tr. 1905. Dr. Koester completed a Medical Certification for Disability Exceptions, Form N-648, on behalf of Timsina in June 2019. See Tr. 1904-1909. The form exempted Timsina from the English and civics testing requirements for becoming a U.S. citizen through naturalization. See Tr. 1904-1909. As bases for the exemption, Dr. Koester cited Timsina's mild cognitive impairment, memory loss, connective tissue disorder, and chronic headaches. Tr. 1905. Dr. Koester noted that she had used historical information provided by Timsina's family, administered a standardized test of mental functioning,

and reviewed a recent brain MRI showing potential scarring from a previous brain injury. See Tr. 1906-1907.

**C.   The ALJ's Decision**

The ALJ assessed Timsina's claim under the five-step, sequential analysis required by 20 C.F.R. § 416.920. At step one, the ALJ determined that Timsina had not engaged in substantial gainful activity since December 31, 2014. Tr. 1357. At step two, the ALJ determined that Timsina has the following severe impairments: undifferentiated connective tissue disease; migraines/headaches; type II diabetes mellitus; and depressive disorder. Tr. 1357. The ALJ noted that these severe impairments significantly limit the ability to perform basic work activities as required by Social Security Ruling 85-28. Tr. 1357. The ALJ also noted that Timsina had reported symptoms of vomiting blood and bleeding from the mouth on multiple occasions to treating provides, but her providers were unable to identify an objective cause for the symptoms. Tr. 1357. The ALJ determined that Timsina also suffers from hypothyroidism and mild asthma and that these conditions are not severe because they have been managed medically. Tr. 1357. At step three, the ALJ determined that Timsina's impairments did not meet or medically equal any listed impairments. Tr. 1358.

At step four, the ALJ determined that Timsina has the residual functional capacity ("RFC") to perform light work,

7

except she is limited to an environment with no more than a moderate noise level. Tr. 1360. Further, Timsina could perform uncomplicated tasks and could concentrate, persist, and maintain pace for 2-hour blocks of time throughout the workday. Tr. 1360. Based on this RFC, the ALJ found that Timsina could perform her past relevant work as a home attendant. Tr. 1372. In the alternative, at step five, the ALJ relied upon vocational expert ("VE") testimony in finding that she could perform other unskilled light occupational positions that exist in significant numbers in the economy. Tr. 1374. As a result, the ALJ found that Timsina was not disabled and denied her claim. Tr. 1374.

### III. ANALYSIS

Timsina challenges the ALJ's decision that she was not disabled on the ground that the alternate step-five jobs identified by the vocational expert inappropriately required a workplace accommodation, as well as the ALJ's weighing of two medical opinions. Because substantial evidence supports the ALJ's step-five finding and her evaluation of the medical opinions, a remand is not necessary.

**A.   Step Five Analysis**

At step five of the sequential analysis, the Commissioner bears the burden of proof to show that the claimant can do other work in the national economy despite her impairments. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). An ALJ must consider

the claimant's age, education, work experience, and RFC in her analysis. See 20 C.F.R. § 416.969a. "A vocational expert's testimony provides substantial evidence for a step five determination when the expert's opinion is based on a hypothetical that reflects an RFC finding supported by substantial evidence." Otero, 2015 WL 5089810, at *6 (citing Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447 (1st Cir. 1991)).

Relying on the VE's testimony, the ALJ found at step five that Timsina could perform at least three unskilled jobs that exist in significant numbers in the national economy: cleaner (DOT § 323.687-014), laundry worker II (DOT § 361.685-018), and fruit distributor (DOT § 921.685-046). See Tr. 1374. Timsina argues that the ALJ's finding is not supported by substantial evidence. Specifically, she contends that the ALJ failed to account for her illiteracy and that she would require a workplace accommodation to learn the identified jobs, precluding the ALJ's reliance upon those jobs at step five.

Timsina's argument that the ALJ did not consider her illiteracy is meritless. First, illiteracy "is not a categorical bar to the performance of jobs requiring level-one language development," which is the lowest language rating in the DOT. Downs v. Colvin, No. 14-cv-319-LM, 2015 WL 3549322 at *11 (D.N.H. June 8, 2015). The three jobs the ALJ identified as

9

suitable for Timsina all fall in this language category. See DOT § 323.687-014, 1991 WL 672783; DOT § 361.685-018, 1991 WL 672987; DOT § 921.685-046, 1991 WL 688088. Second, the ALJ explicitly considered Timsina's illiteracy at step five, and the VE was aware of this limitation. See Tr. 1373, 1434.

Timsina's argument that she could not perform the step-five jobs without workplace accommodation fares no better. Timsina contends that she would require an interpreter to learn the jobs the VE had identified, and that, by the VE's own admission, "if an interpreter were necessary in a job . . . that would be an accommodation." Tr. 1444-1445. The court need not decide whether needing an interpreter to learn a job is a workplace accommodation that precludes reliance on that job at step five. Assuming this would be such an accommodation, there is no evidence that an interpreter would be needed for the jobs the ALJ relied upon at step five. The question Timsina's counsel posed to the VE was a hypothetical situation regarding interpreters generally. The VE did not testify that an interpreter was in fact necessary for all the jobs he identified.[5] Specifically, the VE explained that some jobs would

---

[5] Timsina's reliance on the testimony of a VE from a 2017 hearing is likewise misplaced. Contrary to her suggestion, that VE did not testify that an individual in Timsina's position would require an interpreter to learn a job. Rather, the VE testified that if a person "does not speak English . . . and needs a translator in order to learn a job, [then the translator] would

be precluded from possible jobs for Timsina without an interpreter. See Tr. 1445-1446. Although the VE identified two jobs that would require an interpreter during training, the ALJ did not rely upon those jobs in her analysis. Instead, the ALJ relied on three jobs with respect to which there is no evidence that an interpreter would be needed. See Tr. 1374. Therefore, the ALJ did not rely on jobs at step five that require a workplace accommodation.

**B.   Evaluation of Medical Opinions**

Timsina argues that the ALJ's decisions to give little weight to Dr. Dinan's and Dr. Koester's opinions lack support in the record. The court disagrees.

An ALJ must consider medical opinions by both treating and non-treating medical sources. 20 C.F.R. § 416.927(c). An ALJ considers multiple factors when weighing a medical opinion, including examining relationship, treatment relationship, supportability, consistency, and specialization. Id. A treating physician's opinion is controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

be an accommodation to that individual to learn that job." Tr. 85. The VE did not testify that an illiterate person who does not speak English would in fact need an interpreter to train for unskilled work generally or any specific job.

evidence in [the] case record." Purdy, 887 F.3d at 13 (quoting 20 C.F.R. § 416.927(c)(2)). "[G]ood reasons" must be provided for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2).

The ALJ gave little weight to Dr. Dinan's 2018 opinion because the ALJ found Dr. Dinan's conclusions internally inconsistent. See Tr. 1372. The ALJ's assessment is supported by evidence that is "adequate" to persuade "a reasonable mind." See Irlanda Ortiz, 955 F.2d at 769 (internal quotation marks omitted).

The ALJ correctly noted that Dr. Dinan's clinical observations were largely the same in both his reports, but his opinions were markedly different. See Tr. 1372; compare Tr. 400-403, with Tr. 2198-2201. In fact, whereas in 2015, Dr. Dinan observed mild signs of depression and anxiety, in 2018, he did not observe any such signs. Compare Tr. 400, with Tr. 2198. Despite observing signs of depression and anxiety in 2015, Dr. Dinan opined that Timsina "did not have any emotional barriers maintaining attendance and a schedule" and could complete basic, routine work tasks. See Tr. 403. By contrast, in 2018, Dr. Dinan observed no such symptoms and yet he opined that Timsina was unable to stay on-task and was "not able to regulate emotions, control behavior, and [] maintain well-being in a work setting." Tr. 2201. Dr. Dinan did not explain how the reduction in

12

symptoms of depression and anxiety supports the conclusion that Timsina would be <u>less</u> likely to regulate her emotions in the workplace or stay on-task. See 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Nor did Dr. Dinan cite other symptoms or evidence that could explain the greater restrictions he imposed in 2018.[6] See id. ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.).  The ALJ's finding that Dr. Dinan's conclusions were internally inconsistent is, therefore, supported by the record.

   Timsina argues that the ALJ impermissibly substituted her lay opinion for Dr. Dinan's opinion when the ALJ concluded that Dr. Dinan's opinion was internally inconsistent. It is true that an ALJ cannot substitute her own layman's opinion for the opinion of a physician. See Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987). As a layperson, the ALJ is not competent to interpret and apply raw medical

---

[6] In the 2018 report, Dr. Dinan did note that Timsina had reported several new medical conditions that were not listed in the 2015 report, including low hemoglobin levels, hypothyroidism, high blood pressure, lupus, and increased forgetfulness. Tr. 2198. However, the additional medical conditions were not cited as factors in the determinations of Timsina's abilities to work.

13

data. Id. (citing Berrios v. Sec'y of Health & Humans Servs., 796 F.2d 574, 576 (1st Cir. 1986)). But here, the ALJ did not interpret technical medical data when she concluded that Dr. Dinan's opinions were internally inconsistent. Rather, she made a permissible commonsense determination from the language in his reports that a lay person can understand.[7] See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (explaining that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record" unless a "commonsense judgment" can be made "without a physician's assessment").

The ALJ's decision to give little weight to Dr. Koester's opinion also withstands scrutiny, for multiple reasons. First, the ALJ reasoned that there were no contemporaneous treatment notes supporting either the diagnosis of mild cognitive impairment or the administration of a test of intellectual functioning cited in the opinion. Tr. 1370; see 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical

---

[7] Timsina concedes that Dr. Kalfa, whose opinion was given "some weight," came to the same conclusion as the ALJ regarding Dr. Dinan's opinions. She argues that Dr. Dinan's reliance on her medical history distinguishes Dr. Dinan's from Dr. Kalfa's assessment. However, this argument is unpersuasive because Timsina does not explain how the inclusion of her medical history explains the inconsistency in Dr. Dinan's reports.

14

signs and laboratory findings, the more weight we will give that medical opinion.").

Next, the ALJ reasoned that Dr. Koester's opinion that Timsina had a cognitive impairment that exempted her from the naturalization testing requirements is inconsistent with other evidence in the record. Tr. 1370; see 20 C.F.R § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). Specifically, Timsina's other medical providers indicated that she did not qualify for this disability exemption, and there was no evidence that her condition had deteriorated in the interim. See Tr. 421, 424, 429, 432.

Lastly, the ALJ reasoned that Dr. Koester relied on subjective information provided by Timsina and her family to come to her medical conclusion. Tr. 1370. Reliance on information provided by Timsina and her family is entitled to less weight than medical signs and laboratory findings. See 20 C.F.R. § 416.927(c)(3). In sum, the ALJ's explanations are supported by the record and constitute good reasons for giving Dr. Koester's medical opinion little weight.

Timsina argues that the ALJ erroneously discussed Dr. Dinan's and Dr. Koester's opinions in isolation, without crediting their consistency with one another. But, as the Commissioner points out, Timsina cites no authority for the

15

proposition that the ALJ was required to consider the two opinions together, as opposed to considering whether each is consistent with the record as a whole.  In fact, other courts have rejected the same argument.  See, e.g., Hornback v. Comm'r of Soc. Sec., No. 16-CV-298, 2017 WL 1173476, at *4 n.3 (W.D. Mich. Mar. 30, 2017); Hammer v. Comm'r of Soc. Sec., No. 13-10176, 2014 WL 1328190, at *2 n.1 (E.D. Mich. Mar. 31, 2014).

Further, Timsina points to medical evidence provided by Dr. Peter Loeser and David Kamen, PhD., in arguing that Dr. Dinan's and Dr. Koester's opinions were consistent with the record. At most, these additional medical opinions demonstrate that there is conflicting evidence in the record. Resolving such conflicts is for the ALJ, not for the courts. See Purdy, 887 F.3d at 13.[8]

### IV.   CONCLUSION

For the aforementioned reasons, Timsina's motion for an order reversing the Commissioner's decision (Doc. No. 14) should be denied, the Commissioner's motion for an order affirming his decision (Doc. No. 16) should be granted, and the clerk of the court should be directed to enter judgment in favor of the Commissioner and close the case.

---

[8] Timsina also argues that greater limitations identified by Dr. Dinan and Dr. Koester were not adequately considered and resulted in a flawed RFC. This argument is unpersuasive because the ALJ properly discounted the two opinions.

16

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                    _____
                                    Andrea K. Johnstone
                                    United States Magistrate Judge

August 17, 2020

cc:   Karl E. Osterhout, Esq.
      Daniel W. McKenna, Esq.
      James S. Nagelberg, Esq.